UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WILDLIFE TRADING COMPANY OF NEW MEXICO, INC., | |
| Plaintiff, | Docket No.: |
| -against- | **COMPLAINT** |
| BAYSTATE POS, INC., PHILLIP BINGHAM, and BLEEP 2000 (COMPUTERS) LTD. d/b/a Bleep Computing and Bleep North, | |
| Defendants. | |

Plaintiff Wildlife Trading Company of New Mexico, Inc., by its undersigned attorneys, as and for its complaint against defendants Baystate POS, Inc., Phillip Bingham and Bleep 2000 (Computers) Ltd. d/b/a Bleep Computing and Bleep North, alleges as follows:

**PARTIES**

1. Plaintiff Wildlife Trading Company Of New Mexico, Inc. ("Wildlife Trading") is a corporation organized and existing under the laws of the State of New Mexico, whose principal place of business is located at 6 Trowbridge Drive, Bethel, Connecticut. Wildlife Trading is a retailer that operates concessions at cultural institutions. In August 2002, Wildlife Trading was operating at five institutions: The Rio Grande Zoo, Albuquerque, New Mexico; Albuquerque Bio-Park, Albuquerque, New Mexico; Reid Park Zoo, Tucson Arizona; The Dallas Zoo, Dallas, Texas; and the Oregon Coast Aquarium, Newport, Oregon.

2. Upon information and belief, defendant Baystate POS, Inc. ("Baystate") is a corporation organized and existing under the laws of the State of Massachusetts, whose principal place of business is located at 770 Dedham St., S-3, Canton, Massachusetts. Defendant Baystate

is a vendor of POS systems including the related POS devices, cash registers and the software systems.

3.  Upon information and belief, defendant Phillip Bingham ("Bingham") is a natural person and a citizen residing at 362 Massapoag, Sharon, MA 02067-2717. Upon information and belief, Phillip Bingham was at all relevant times and is currently an owner of Baystate and the President, Treasurer and Clerk of Baystate.

4.  Upon information and belief, defendant Bleep 2000 (Computers) Ltd. d/b/a Bleep Computing and Bleep North ("Bleep") is a foreign corporation located at 7 St. Saviours Wharf, Mill Street, London, United Kingdom.

## JURISDICTION AND VENUE

5.  This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(3) in that plaintiff Wildlife Trading and defendants Baystate and Bingham are citizens of different states, defendant Bleep is a citizen of the United Kingdom, and the amount in controversy exceeds $75,000 exclusive of costs and interest.

6.  Venue is proper in this district because a substantial part of the events or omissions giving rise to the claim occurred and the defendants are subject to personal jurisdiction in this district.

## NATURE OF ACTION

7.  Plaintiff Wildlife Trading is a retailer of specialty goods at numerous cultural institutions across the country. Wildlife Trading had been using a DOS version of Bleep in almost all of its locations to process sales and inventory, but the locations were not networked.

8.  Defendants are vendors, designers and/or manufacturers of point-of-sale ("POS") systems for retailers including cash registers and related software programs. Based on

Bingham's recommendation, Wildlife Trading agreed to upgrade its POS system to a windows version that could be networked and would provide Wildlife Trading with immediate access to information. Wildlife Trading relied upon Baystate's and Bingham's expertise in recommending and selecting a compatible POS system. The defendants promised Wildlife Trading that the recommended upgrade would allow them to accurately track inventories and sales, to reduce labor costs associated with inventory and sales data entry, and to prepare better reports that would give Wildlife Trading, its customers and prospective new business a better picture of Wildlife Trading's business.

9. Those promises proved utterly empty. After more than a year of struggling to adopt the defendants' useless recommendations, the upgrade was a complete failure. The software and hardware that the defendants recommended and attempted to install were incompatible with each other, and wholly insufficient for Wildlife Trading's needs and goals.

10. As a result of the defendants' breaches of contract and other wrongful conduct, Wildlife Trading suffered damages exceeding $500,000. Wildlife Trading spent about $133,000 on the new system that defendants were to install. Wildlife Trading spent more than $41,000 on deposits for hardware and software that defendants inappropriately recommended. Wildlife Trading's employees spent months working with the defendants to install this system, causing Wildlife Trading to incur labor costs in excess of $97,000. In addition, Wildlife Trading has lost approximately $283,000 in business that it was unable to obtain because of the defendants' actions.

**FACTUAL BACKGROUND**

11. The success of Wildlife Trading's business requires it to maintain adequate product inventory through timely and accurate purchasing. In 2002, after Wildlife Trading was

awarded several new concession contracts, Wildlife Trading decided to upgrade its existing POS system to a fully-networked Windows-based system.

A.     **Defendants' Misrepresentations**

12.     In letters dated July 9, 10 and 25, 2002 (the "Proposal Letters"), defendants made a series of written proposals to Wildlife Trading setting forth how they proposed to upgrade Wildlife Trading's POS System. The proposal recommended Casio TK-7500 registers and the Windows version of Bleep software. Defendants also recommended that the software be "hosted" by the defendants on computer servers they would maintain and operate in Massachusetts.

13.     In the Proposal Letters, the defendants made the following representations:

- They had expertise in selecting and installing POS systems for companies like Wildlife Trading (July 9 letter);

- They were qualified to upgrade Wildlife Trading's computer systems from DOS to Windows (July 9 letter);

- "Bleep allows seamless data transfers to databases..." (July 9 letter);

- The Casio CE-4700 Scanboard "can be polled by ... Bleep Windows" and "can upload or download data to the register in a single session" (July 9 letter);

- Baystate POS would have to host the Bleep Polling Operation for one year (July 9 letter);

- Wildlife Trading would "not need to hire technical staff to support the POS Systems or the application software" (July 9 letter);

- The Bleep Windows is the appropriate POS System for Wildlife Trading's computing needs (July 9 letter);

- The cash registers being recommended to Wildlife Trading would "upload and download data between the POS registers at the site and the hosting PC in Boston" (July 10 letter);

- Defendants "have worked out the details with Bleep London and modeled the design after the set-up they use in the UK." Bingham and Baystate thus represented that, working with Bleep, they had confirmed that all of the equipment and software would be compatible and could be successfully networked (July 10 letter);

4

- Defendants promised that adopting these changes would cause the POS system to "work better, free your staff to perform more productive work and will cost you significantly less with better results and fewer headaches" (July 25).

**B.    The Agreement**

14.    Based on the foregoing, on or about August 27, 2002, Wildlife Trading entered into an agreement with Baystate whereby Baystate agreed to upgrade Wildlife Trading's POS system and software and to manage Wildlife Trading's POS system and related software and hardware (the "Agreement"). The Agreement provided, in relevant part, as follows:

- Upgrades to the POS system and software would be effectuated to all of Wildlife Trading's locations no later than February 15, 2003;

- Wildlife Trading would be able to use new Casio registers that were compatible with Bleep's Windows software;

- Wildlife Trading would have centralized sales and inventory monitoring and be able to run monthly reports to track their sales and inventory;

- Price changes for individual locations would be set by corporate headquarters, so that individual locations would charge different prices for the same inventory;

- Defendants would maintain the servers necessary to run the software, but all of Wildlife Tradings' locations would have reliable remote access to the software;

- Defendants would provide software and hardware protection to prevent unauthorized access ("hacking") into Wildlife's POS system.

15.    Pursuant to the Agreement, Wildlife Trading paid to defendants more than $41,000 for deposits for the hardware and software the defendants were to install. Wildlife Trading also promised to reimburse defendants for their documented expenses incurred during the process of installing the POS System.

C.  **The Installation**

16.  For the next year and a half, defendants traveled extensively, at Wildlife Trading's expense, to Wildlife Trading's locations throughout the United States, ostensibly to install and maintain the Bleep POS system.

17.  Nevertheless, the POS system was never satisfactorily installed. The system often crashed. Inventory information was not properly entered, maintained or transmitted. Individual stores never had access to the computer server. In short, the entire installation was an unmitigated disaster.

18.  Defendants were unresponsive to these problems. At first, they tried to blame Wildlife Trading for problems that were obviously the fault of their own products. They tried to cobble together patches to these problems that never worked.

19.  On August 30, 2003, defendant "unplugged" the server, disabling data transfer to the store registers, and by December 2003, had stopped communicating with Wildlife Trading altogether.

20.  At the time that defendants ceased communications with Wildlife Trading, seventeen months after the defendants' initial proposal, many problems still existed with the POS system, including without limitation:

- PLU numbers used to track inventory had never been transmitted to many registers, and sales data was not collected from new registers;

- Baystate and Bingham had installed registers in some locations that were not compatible with the POS system;

- Installation was not accomplished at sites within the time periods that Bingham had originally proposed;

- The only site that had regular access to the server was the Connecticut office of Wildlife Trading, and that office only had regular access for about two months;

- Most on-site installations by Baystate were left incomplete, with all systems failing to perform as promised by Bingham;

- Baystate and Bingham regularly provided Wildlife Trading incomplete or inaccurate inventory and sales data;

- At no site operated by Wildlife Trading did the POS system function properly;

- Price changes could not be made at individual registers, in contravention to the specifications required by Wildlife Trading and agreed upon by defendants;

- Goods could not be sold at different prices at different locations, in contravention of the specifications required by Wildlife Trading and agreed upon by the defendants;

- Defendants failed to provide accurate security against computer "hackers"; in May 2003 and June 2003, the program's security was breached, causing a significant disruption to Wildlife Trading's business;

- In June 2003, the entire system collapsed while downloading the inventory data from the Dallas location because, upon information and belief, the system was equipped with insufficient memory;

- Only one site could be logged onto the system at a time, when the defendants' proposal promised that ten sites could be logged on simultaneously;

- Defendants were non-responsive to requests by Wildlife Trading to resolve these issues;

- Defendants would often shut the system down without warning Wildlife Trading or the individual sites, causing unnecessary disruption to Wildlife Trading's operations; and

- Defendants failed to submit documentation to support expenses they claimed were incurred in servicing Wildlife Trading's sites.

In short, Wildlife Trading had to scrap its computer systems and purchase new software and hardware at significant additional time, labor and expense.

21. After it became clear that the POS system was not functioning properly, was incompatible with the hardware recommended by defendants and could not be repaired, Wildlife Trading requested that defendants accept return of the POS system and inventory. Defendants

7

wrongfully refused to accept any return, in contravention to their agreement to accept a return if their recommendations proved flawed.

**D.     Damages**

22.     As a direct and proximate result of the problems with the POS system, Wildlife Trading has suffered more than $500,000 in damages. Wildlife Trading paid defendants more than $133,000 for a system that utterly failed to work as promised, or in any serviceable manner. Wildlife Trading has not received any reimbursement for the more than $41,000 in deposits for the hardware and software that defendants inappropriately recommended. Wildlife Trading incurred 's labor costs in excess of $97,000 because employees spent months working with the defendants to install this system. In addition, Wildlife Trading has lost approximately $283,000 in business that it was unable to obtain because of the defendants' actions.

**E.     The Relationship Between Bingham, Baystate and Bleep**

23.     Baystate and Bingham represented to Wildlife Trading that they were the exclusive representatives for Bleep in the United States.

24.     Bleep's own website touts their agent in Boston, stating that their "first overseas office was opened to service the growing market. Based in Boston, USA, the office offers all the facilities as the UK centres, focusing on sales and support…." Upon information and belief, this "overseas office" in Boston refers to Baystate.

25.     Baystate and Bingham also represented that Bleep's POS system would fulfill all of Wildlife Trading's requirements and goals.

26.     Bleep's own website confirms its commitment to customer service:

> Bleep Computing aims to provide the highest level in all aspects of services offered to clients. These range from initial consultation,

8

project management to installation and training, through to post-sales support and maintenance.

27. Upon information and belief, Baystate at all relevant times, acted as the agent and authorized representative of Bleep and Bleep is legally responsible for all of Baystate's actions arising out of that agency relationship.

28. At all relevant times, Bingham represented himself to Wildlife Trading as Bleep's exclusive distributor in the United States, correspondence to Wildlife Trading would sometimes bear the legend "Bleep North America" and conversations with Bleep representatives in the United Kingdom confirmed that Bingham and Baystate were familiar and authorized representatives of Bleep in the United States.

29. Wildlife Trading also communicated directly with Bleep. During these conversations, Ashley Harrison, Bleep's President, told Wildlife that Bleep 2000 could not work with the Casio registers recommended by Baystate. Harrison suggested changing to PC's in the stores, and offered specifications for needed equipment. However, soon thereafter, Bleep ceased communicating with Wildlife Trading.

30. Upon information and belief, individual defendant Bingham thoroughly dominates Baystate and has complete discretion over all of Baystate's business decisions, not only of finances but of policy and business practice. This is particularly so with respect to Baystate's agreement with Wildlife Trading, so that Baystate had at the time no separate mind, will or existence of its own.

31. Upon information and belief, such control was used by Bingham to do a dishonest or unjust act in contravention of Wildlife Trading's legal entitlement to the upgrades that Bingham and Baystate contracted to provide to Wildlife Trading.

32. Upon information and belief, Bingham uses corporate funds for his own benefit and for personal rather than corporate purposes.

33. Upon information and belief, Bingham has not maintained Baystate with the appropriate corporate forms.

34. Upon information and belief, Baystate is nothing more than an alter ego of Bingham.

35. Upon information and belief, Baystate is merely Bingham's instrumentality or agent. Upon further information and belief, Bingham is the 100% owner of Baystate.

**FIRST CLAIM FOR RELIEF**
**(Breach of Contract)**

36. Plaintiffs repeat and reallege each of the foregoing allegations as if set forth fully herein.

37. Wildlife Trading and Defendants entered into an Agreement, whose terms and conditions are more fully referenced in paragraph 14 of this Complaint, whereby the defendants agreed to upgrade Wildlife Trading's POS system and software and to manage Wildlife Trading's POS system and related software and hardware.

38. Defendants breached the Agreement by failing to upgrade Wildlife Trading's POS system.

39. Defendants breached the Agreement by selling POS system software that was incompatible with POS hardware.

40. Defendants breached the Agreement by failing to manage the POS system and related software and hardware.

41. Defendants breached the Agreement by refusing to accept return of the POS system.

42. As a direct and proximate result of the aforesaid material breaches of the Agreement, Wildlife Trading has sustained consequential and incidental damages in an amount not yet determined, but believed to be in excess of $500,000.00, relief for which is requested herein.

43. By reason of the foregoing, Wildlife Trading is entitled to judgment against the defendants in an amount to be determined at trial.

## SECOND CLAIM FOR RELIEF
### (Breach of Warranty)

44. Plaintiff repeats and realleges each of the foregoing allegations as if set forth fully herein.

45. Wildlife Trading and defendants entered into an agreement pursuant to which defendants would design, install, implement and manage a new POS system for Wildlife Trading.

46. Wildlife Trading purchased the new POS system in order to improve the accuracy and timeliness of the inventory and sales information, to reduce or eliminate labor costs associated with repetitive inventory and sales data entry, to produce improved sales history reports and thereby increase Wildlife Trading's ability to secure additional concession awards, and to improve sales history reporting to clients.

47. Wildlife Trading relied on the defendants' skill and judgment to select or furnish a POS system that would fulfill Wildlife Trading's goals and requirements.

48. Wildlife Trading informed defendants of the specific purposes that the new POS system were to accomplish and Wildlife Trading also informed defendants that it was relying on the defendants' expertise to select or furnish goods that are suitable for its goals and requirements.

49. By selecting a POS system for the plaintiff, defendants implicitly and explicitly warranted that the POS system would be fit for Wildlife Trading's purposes.

50. The POS system selected by the defendants was wholly and manifestly unfit for Wildlife Trading's requirements and goals.

51. Wildlife Trading timely notified defendants that the POS system was unfit. Nevertheless, defendants failed to correct the POS system's deficiencies.

52. Economic losses proximately resulted from the unfitness of the goods for the plaintiff's purpose.

53. As a direct and proximate result of defendants' aforesaid material breaches of the Agreement, Wildlife Trading has sustained consequential and incidental damages in an amount not yet determined, but believed to be in excess of $500,000.00, relief for which is requested herein.

54. By reason of the foregoing, Wildlife Trading is entitled to judgment against the defendants in an amount to be determined at trial.

### THIRD CLAIM FOR RELIEF
(Fraud in the Inducement)

55. Plaintiff repeats and realleges each of the foregoing allegations as if set forth fully herein.

56. As set forth in paragraph 13, above, defendants made numerous representations to Wildlife Trading to induce it to retain defendants' services to upgrade Wildlife Trading's POS system. Upon information and belief, these representations were materially false at the time they were made.

57. Upon information and belief, defendant knew that these representations were materially false when made.

58. Upon information and belief, these representations were made in order to induce Wildlife Trading to enter into an agreement with defendants to upgrade their systems in accordance with the recommendations and representations of July 9, 2002 and at other times.

59. In reliance on the truth and accuracy of these representations, Wildlife Trading was induced to and did enter into an agreement with defendants.

60. Due to the materially false representation, Wildlife Trading has sustained consequential and incidental damages in an amount not yet determined, but believed to be in excess of $500,000.00, plus punitive damages in an amount no less than $2,000,000, relief for which is requested herein.

61. By reason of the foregoing, Wildlife Trading is entitled to judgment against the defendants in an amount to be determined at trial.

**FOURTH CLAIM FOR RELIEF**
(Unjust Enrichment)

62. Plaintiff repeats and realleges each of the foregoing allegations as if set forth fully herein.

63. Wildlife Trading paid defendants for a POS system that would allow Wildlife Trading to improve the accuracy and timeliness of the inventory and sales information, to reduce

or eliminate labor costs associated with repetitive inventory and sales data entry, to produce improved sales history reports and thereby increase Wildlife Trading's ability to secure additional concession awards, and to improve sales history reporting to clients.

64. The defendant was benefited by these payments.

65. The defendants did not supply to Wildlife Trading a POS system that fulfilled these requirements.

66. Retention of the payments by defendants would be manifestly inequitable and unjust.

67. By receiving payments and not supplying a POS system of commensurate value to Wildlife Trading, the defendants have been enriched at Wildlife Trading's expense.

68. As a direct and proximate result of the aforesaid, defendants have been unjustly enriched at Wildlife Trading's expense, and have therefore caused consequential and incidental damages to Wildlife Trading in an amount not yet determined, but believed to be in excess of $500,000.00, relief for which is requested herein.

69. By reason of the foregoing, Wildlife Trading is entitled to judgment against the defendants in an amount to be determined at trial.

WHEREFORE, Plaintiff Wildlife Trading of New Mexico Company, Inc. demands judgment:

A. On its first cause of action for breach of contract, against defendants in an amount to be determined at trial;

B. On its second cause of action for breach of warranty, against defendants in an amount to be determined at trial;

C. On its third cause of action for fraud, against defendants in an amount to be determined at trial;

D. On its fourth cause of action for unjust enrichment, against defendants in an amount to be determined at trial;

E. Such costs, disbursements and such other and further relief as the Court may deem just and proper.

Respectfully submitted,

WILDLIFE TRADING COMPANY OF
NEW MEXICO, INC.

by its attorneys,

/s/ Neal Bingham
Andrew D. Myers, BBO# 556930
Neal J. Bingham, BBO# 652029
Davis, Malm & D'Agostine, P.C.
One Boston Place
Boston, MA 02108
617-367-2500

Dated: August 12, 2005

15

376570v.1

**JS 44** (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

### I. (a) PLAINTIFFS
WILDLIFE TRADING COMPANY OF NEW MEXICO, INC.

### DEFENDANTS
BAYSTATE POS, INC., PHILLIP BINGHAM, and BLEEP 2000 (COMPUTERS) LTD. d/b/a Bleep Computing and Bleep North

(b) County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant  NORFOLK
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
Neal J. Bingham, Davis, Malm & D'Agostine, P.C.,
One Boston Place, Boston, MA 02108 (617) 367-2500

Attorneys (If Known)
**05-11678 RCL**

### II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

### III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

### IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | **PERSONAL PROPERTY** | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 370 Other Fraud | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 371 Truth in Lending | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal Property Damage | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 385 Property Damage Product Liability | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☒ 190 Other Contract | ☐ 360 Other Personal Injury | | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

### V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

### VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. 1332
Brief description of cause:
Breach of Contract

### VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ 500,000.00
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

### VIII. RELATED CASE(S) IF ANY
(See instructions)
JUDGE _____
DOCKET NUMBER _____

DATE  8/12/05
SIGNATURE OF ATTORNEY OF RECORD  /s/ Neal Bingham

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. Title of case (name of first party on each side only)  **Wildlife Trading Company, Inc. v. Baystate POS, Inc.**

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet. (See local rule 40.1(a)(1)).

    ☐   I.    160, 410, 470, 535, R.23, REGARDLESS OF NATURE OF SUIT.

    ☐   II.   195, 196, 368, 400, 440, 441-446, 540, 550, 555, 625, 710, 720, 730,   *Also complete AO 120 or AO 121
              740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.           for patent, trademark or copyright cases

    ☑   III.  110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
              315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
              380, 385, 450, 891.

    ☐   IV.   220, 422, 423, 430, 460, 480, 490, 510, 530, 610, 620, 630, 640, 650, 660,
              690, 810, 861-865, 870, 871, 875, 900.

    ☐   V.    150, 152, 153.

3. Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?
   YES ☐   NO ☑

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest? (See 28 USC §2403)
   YES ☐   NO ☑
   If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?
   YES ☐   NO ☐

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?
   YES ☐   NO ☑

7. Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).
   YES ☑   NO ☐

    A. If yes, in which division do all of the non-governmental parties reside?
       Eastern Division ☑   Central Division ☐   Western Division ☐

    B. If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?
       Eastern Division ☐   Central Division ☐   Western Division ☐

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)
   YES ☐   NO ☐

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME  Neal J. Bingham
ADDRESS  Davis, Malm & D'Agostine, P.C., One Boston Place, 37th Fl., Boston, MA 02108
TELEPHONE NO.  (617) 367-2500

(CategoryForm.wpd - 5/2/05)